IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK15-82016 |
| CHARLES LEONARD and ) | A17-8019 |
| MARGARET LEONARD, ) | |
| ) | CHAPTER 7 |
| Debtor(s). ) | |
| RICHARD D. MYERS, Trustee of the ) | |
| Charles & Margaret Leonard Chapter 7 ) | |
| bankruptcy estate, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| BRIAN WITT, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is before the court on the Chapter 7 trustee's motion for summary judgment (Fil. No. 24) and resistance by the defendant (Fil. No. 42). Sam King represents the plaintiff, and Erin Ebeler Rolf represents the defendant. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is denied.

This is an adversary proceeding to avoid alleged preferential transfers. The debtor Charles Leonard was a feeder cattle dealer and order buyer. He purchased cattle in mid-2015 from the defendant, Brian Witt, and/or Riverside Cattle Co. L.L.C., in which Witt owned an interest. The bankruptcy trustee alleges that Leonard issued three checks in late September or early October 2015 to pay for the cattle. Only one of those checks was honored. The trustee further alleges that Leonard then executed a mortgage on a parcel of real property in Witt's favor, assigned Witt an ownership interest in various insurance policies, and transferred liens on three of the Leonards' vehicles to Witt, in an effort to provide Witt with security for the dishonored checks. All of these transfers occurred approximately 60 days before the Leonards filed their bankruptcy petition, so the trustee seeks to avoid the transfers, invalidate Witt's alleged liens, and recover the property for the benefit of the bankruptcy estate. The trustee has now moved for summary judgment, asserting that no genuine issues of material fact exist to preclude entry of judgment in his favor. The defendant argues that the transfers were intended to be exchanges for new or subsequent value, or payments made in the ordinary course of business, and therefore could not have been preferences.

This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (E), (F), (K) and (O), and the parties consent to entry of final orders or judgments by the bankruptcy court.

The Eighth Circuit Court of Appeals has described the purpose and parameters of the avoidance of preferential transfers:

> "Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." *Barnhill v. Johnson*, 503 U.S. 393, 394, 112 S. Ct. 1386, 118 L. Ed. 2d 39 (1992). "This rule 'is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy.'" *Lindquist v. Dorholt (In re Dorholt, Inc.)*, 224 F.3d 871, 873 (8th Cir. 2000) (quoting *Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 326 (8th Cir. 1997)).
>
> "Title 11 U.S.C. § 547(b) requires that in order for a transfer to be subject to avoidance as a preference, (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation." *Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.)*, 986 F.2d 228, 230 (8th Cir. 1993). The trustee must establish each of these elements by a preponderance of the evidence. *Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.)*, 247 B.R. 463, 466 (8th Cir. B.A.P. 2000).

*Wells Fargo Home Mortgage, Inc. v. Lindquist*, 592 F.3d 838, 842 (8th Cir. 2010).

The parties agree on the following facts in this case:

1. Charles and Margaret Leonard filed a Chapter 11 petition in bankruptcy on December 14, 2015.

2. On December 21, 2016, the Leonards' Chapter 11 bankruptcy case was converted to Chapter 7 and Richard D. Myers was appointed as the Chapter 7 Trustee of the case on the same date.

3. Leonard Cattle Company ("LCC") has, at all relevant times, been a sole proprietorship owned and controlled by Charles Leonard.

4. At all relevant times, Brian Witt owned an interest in Riverside Cattle Co. L.L.C. ("Riverside Cattle"), a Nebraska limited liability company with its principal place of business in Falls City, Nebraska.

5. Between January and October 2015, Witt, either personally or through Riverside Cattle, sold cattle to LCC on numerous occasions.

6. On or about June 10, 2015, Leonard agreed to purchase 289 heifers from Witt and/or Riverside Cattle.

7. The 289 heifers were scheduled for delivery between October 1 and October 10, 2015.

8. After delivery of the 289 heifers, Witt and/or Riverside Cattle invoiced LCC on or about October 2, 2015, in the amount of $457,141.56 ("Invoice No. 13718").

9. Leonard, through LCC, issued Check No. 20069, payable to Witt and Horton National Bank in the amount of $457,141.56, on Invoice No. 13718.

10. On or about June 16, 2015, Leonard agreed to purchase 384 heifers from Witt and/or Riverside Cattle.

11. The 384 heifers were scheduled for delivery between September 15, 2015, and September 30, 2015.

12. Only 383 of the 384 heifers were delivered.

13. After delivery of the 383 heifers, Witt and/or Riverside Cattle invoiced LCC on or about October 2, 2015, in the amount of $566,193.42.

14. Leonard, through LCC, issued Check No. 20052, payable to Witt and Horton National Bank in the amount of $566,193.42, on Invoice No. 13721.

15. On or shortly before September 30, 2015, Leonard agreed to purchase 110 steers from Witt.

16. After delivery of the 110 steers, Witt and/or Riverside Cattle invoiced LCC on or about September 30, 2015, in the amount of $184,084.39 ("Invoice No. 13699").

17. Leonard, through LCC, issued Check No. 20070, payable to Witt and Horton National Bank in the amount of $184,084.39, on Invoice No. 13699.

18. On or about October 2, 2015, Tammy Nichols, LCC's bookkeeper, mailed Check Nos. 20069, 20052, and 20070 to Horton National Bank.

19. Shortly thereafter, Horton National Bank contacted Witt, notifying him that Check Nos. 20069, 20052, and 20070 were being dishonored by the drawer bank.

20. After learning of the dishonors, Witt went to LCC's office during the week of October 5, 2015.

21. Leonard issued replacement checks to Witt for the dishonored checks.

22. The $184,081.39 replacement check was honored by Leonard's bank on or about October 8, 2015.

23. The other two replacement checks were again dishonored or otherwise disallowed for negotiation.

24. Leonard's payment of the $184,081.39 replacement check occurred within the ninety-day preference period.

25. The Leonards were insolvent on the date the $184,081.39 replacement check was honored.

26. On or near October 15, 2015, the Leonards transferred to Witt the following life insurance policies:
    a. Prudential Insurance Policy # 82303309
    b. Prudential Insurance Policy # 34093775
    c. Prudential Insurance Policy # 34999909
    d. Prudential Insurance Policy # 76871976
    e. Prudential Insurance Policy # 77021188
    f. Prudential Insurance Policy # 77173311
    g. Prudential Insurance Policy # 82195180
    h. Prudential Insurance Policy # 82216634
    i. Prudential Insurance Policy # 82370129
    j. Prudential Insurance Policy # 77906175

27. The Leonards' transfer of their interests in the insurance policies occurred within the ninety-day preference period.

28. On or about October 13, 2015, the Leonards executed a promissory note ("Promissory Note") payable to Witt.

29. The Promissory Note included a pledge of a mortgage and vehicle liens as security for the indebtedness memorialized therein.

30. The Leonards transferred to Witt a lien on the following three vehicles owned by the debtors: a 2015 Ford white pickup truck (VIN 1FTEW1EF9FFA10426); a 2014 Buick Enclave (VIN 5GAKVBKD5EJ158729), and a 2015 GMC Yukon (VIN 1GKS2JKJ8FR274439).

31. On or about October 13, 2015, the Leonards transferred to Witt the certificates of title for the vehicles set forth and described in the preceding paragraph.

32. On or about October 15, 2015, Witt perfected the vehicle liens by noting them on the titles for the vehicles described above.

33. On October 13, 2015, the Leonards transferred to Witt a mortgage on their real property located at 4603 South 154th Circle, Omaha.

34. The mortgage was filed with the Douglas County Register of Deeds on October 13, 2015.

35. The Leonards were insolvent on October 13, 2015.

36. The mortgage transfer occurred within the ninety-day preference period.

37. Witt's perfection of the vehicle liens occurred within the ninety-day preference period.

38. The Leonards were insolvent on or near October 15, 2015.

39. The transfers of the $184,084.39, mortgage, vehicle liens, and insurance policies were made by the Leonards to Witt.

40. The Certificate of Organization for Cinch Cattle Company ("Cinch") was filed with the Nebraska Secretary of State on October 15, 2015.

41. Cinch was capitalized by a $500,000 line of credit that Witt and/or /Riverside Cattle obtained from Horton National Bank.

42. Cinch was wholly owned by Riverside Cattle, which is solely owned by Witt.

43. Leonard bought and sold cattle on behalf of Cinch.

44. Cinch continued to operate until December 2016, when Witt terminated Leonard's relationship with Cinch.

The defendant admits that four of the preference elements are met with regard to each of the transfers: the debtors transferred an interest in property to or for the benefit of a creditor within 90 days before the bankruptcy petition was filed and while they were insolvent. However, the defendant disputes the remaining two elements: whether the transfers were made for or on account of an antecedent debt, and whether the transfers enabled Witt to receive more than he would have if the transfers had not been made. The defendant also asserts the affirmative defenses of payments made in the ordinary course of business and new value either as part of a contemporaneous exchange or for subsequent new value. 11 U.S.C. § 547(c)(1), (2), and (4).

Section 547(c)(1) provides that the trustee may not avoid an otherwise preferential transfer to the extent such transfer was intended by the debtor and creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor, and was in fact a substantially contemporaneous exchange. "The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." *Dietz v. Calandrillo (In re Genmar Holdings, Inc.)*, 776 F.3d 961, 964 (8th Cir. 2015).

Document Page 6 of 8

Section 547(c)(2) provides that the trustee may not avoid a transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee and such transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee. The transferee bears the burden of establishing the ordinary course of business defense by a preponderance of the evidence. *Gulfcoast Workstation Corp. v. Peltz (In re Bridge Info. Sys., Inc.)*, 460 F.3d 1041, 1044 (8th Cir. 2006). The Eighth Circuit Court of Appeals has stated that "the court must engage in a peculiarly factual analysis" to determine whether a preferential transfer was made within the ordinary course of business between the parties because there is no precise legal test to apply. *Cox v. Momar Inc. (In re Affiliated Foods Sw. Inc.)*, 750 F.3d 714, 719 (8th Cir. 2014).

Section 547(c)(4) provides that the trustee may not avoid a transfer to the extent that, after the transfer, the creditor gave new value to or for the benefit of the debtor and on account of which new value the debtor did not make an otherwise unavoidable transfer to such creditor. "New value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation. § 547(a)(2). "New value advanced by a creditor after it receives a preferential transfer from a debtor generally protects the earlier preferential payment from avoidance because, '[i]f a creditor advances new value to the debtor, the debtor's assets have not been depleted to the disadvantage of other creditors.'" *Saracheck v. Crown Heights House of Glatt, Inc. (In re Agriprocessors, Inc.)*, 521 B.R. 292, 313 (Bankr. N.D. Iowa 2014) (quoting *Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.*, 83 F.3d 253, 257 (8th Cir. 1996) and *In re Kroh Bros. Dev. Co.*, 930 F.2d 648, 652 (8th Cir. 1991)).

In *Kroh Bros.*, the Eighth Circuit adopted the following analysis for § 547(b) transactions:

> First, the creditor must have received a transfer that is otherwise avoidable as a preference under § 547(b). Second, after receiving the preferential transfer, the preferred creditor must advance "new value" to the debtor on an unsecured basis. Third, the debtor must not have fully compensated the creditor for the "new value" as of the date that it filed its bankruptcy petition.

930 F.2d at 652.

> The trustee is able to avoid preferences in bankruptcy for the sake of equality of distribution of assets among creditors. Therefore, a preference does not merely diminish the estate, it does so unfairly. *See* H.R. Rep. No. 95–595, 95th Cong., 2d Sess. 177–78, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6138. A creditor who subsequently advances to the estate new value in an amount equal to the preference, however, "in effect returns the preference to the estate." *Erman v. Armco (In re Formed Tubes)*, 46 B.R. 645, 647 (Bankr. E.D. Mich. 1985) (quoting 2 Norton *Bankruptcy Law & Practice* § 32.20 (1981)). The debtor who makes a preferential transfer to a creditor who subsequently advances new value, then, has not "depleted the bankruptcy estate to the disadvantage of other creditors." *In re Florida*

> *Jet Sys.*, 841 F.2d at 1083. *Accord Bernstein v. RJL Leasing (In re White River Corp.)*, 50 B.R. 403, 409 (Bankr. D. Colo. 1985), r*ev'd on other grounds*, 799 F.2d 631 (10th Cir. 1986). But when a debtor pays for new value or the creditor retains a security interest in the new value, "there is in effect no return of the preference." *In re Formed Tubes*, 46 B.R. at 647. Thus, the relevant inquiry under section 547(c)(4) is whether the new value replenishes the estate. If the new value advanced has been paid for by the debtor, the estate is not replenished and the preference unfairly benefits a creditor.

*Id.*

Much of Witt's argument focuses on the creation of Cinch Cattle Company as a vehicle for Leonard to continue his work and attempt to earn some money to pay his creditors. He maintains he simply wanted to help Leonard get back on his feet by starting over with a new business. Witt claims he took the assets offered as collateral for the $500,000 loan to open Cinch, and not as security for antecedent debts.

As Witt points out in the chart at pp. 14-15 of his brief, the events at issue all occurred in a compressed, eight-day time frame:
• the $184,081.39 transfer via the replacement check Leonard wrote to Witt happened on October 8,
• the parties executed a promissory note, filed the mortgage, assigned the insurance policies, transferred the vehicle title certificates, and formed CDL Cattle Company and Cinch Cattle Company on October 13-15, and
• Cinch's bank account was opened with a $500,000 deposit on October 16.

The affirmative defenses all require a factual analysis to determine if any of them are applicable here. To a large extent, these defenses turn on the parties' intent regarding the transfers, and the deposition testimony submitted on this motion demonstrates the existence of questions regarding such intent. There is strong evidence that the transfers were made on account of antecedent debts owed to Witt, and that the formation of Cinch was a stop-gap effort to curtail losses and preserve the parties' business relationship – particularly since Leonard was not the recipient of the loan to open Cinch and was essentially an employee, and because Leonard's bankruptcy estate remained depleted by the transfers – but such findings are not appropriate at the summary judgment stage. The parties should be permitted to present their case at trial.

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986)). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are the province of the fact-finder at trial and not of the judge at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250, 255.

IT IS ORDERED: The Chapter 7 trustee's motion for summary judgment (Fil. No. 24) is denied.[1]

DATED: September 26, 2018.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
*Sam King
Erin Ebeler Rolf
U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[1] The court recognizes that the trustee has recently filed a motion for leave to file objections to the evidence presented by the defendants. Because the court has denied the trustee's motion for summary judgment, the court declines to rule on the evidentiary objections raised by the trustee and the motion for leave will be marked as moot.